COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-185-CV
  
  
  
IN 
THE INTEREST OF
  
  
C.R.W., 
B.W., AND A.N.W., CHILDREN
  
  
------------
 
FROM 
THE 323RD DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Sunshine W. appeals the trial court’s order terminating her parental rights to 
her children, C.R.W., B.W., and A.N.W.  In one issue, she challenges the 
factual sufficiency of the evidence supporting the trial court’s findings that 
she had (1) knowingly placed or allowed the children to remain in conditions or 
surroundings that endangered their physical or emotional well-being; (2) engaged 
in conduct or knowingly placed the children with persons who engaged in conduct 
that endangered their physical or emotional well-being; and (3) constructively 
abandoned the children.  We will affirm.
        The 
children first came into the State’s care on February 10, 2002 after their 
father, with whom they had been living, immersed then three-year-old A.N.W. in 
scalding water for wetting his pants.  An investigator for Texas Department 
of Protective and Regulatory Services (TDPRS)[2] 
testified that after Sunshine heard from the boys’ grandfather that her sons 
had been placed in foster care, Sunshine contacted TDPRS on February 14, 2002 
and expressed her desire to be reunited with her children and her willingness to 
comply with a service plan that TDPRS would recommend.
        On 
February 20, 2002, the trial court held an adversary hearing, found that placing 
the boys with Sunshine was not in their best interest, and appointed TDPRS 
temporary managing conservator of the children.  The trial court also 
ordered Sunshine to take certain actions to obtain the return of the children, 
including attending counseling sessions and parenting classes, submitting to 
psychological, drug, and alcohol testing, complying with the service plan 
formulated by TDPRS, and maintaining stable housing and employment.
        The 
court appointed the boys’ maternal grandparents as their temporary possessory 
conservators on July 29, 2002, but three months later the grandparents requested 
TDPRS to find another placement because they were moving out of state and could 
not take the boys with them.  The boys’ TDPRS case worker testified that 
the grandparents told her they had agreed to take the boys on a temporary basis 
while Sunshine worked towards completing the court-ordered actions necessary to 
regain custody of her children, but they did not feel that Sunshine was making 
efforts to comply with the service plan.  The case worker further testified 
that she attempted to help Sunshine obtain Section 8 housing and even provided 
$200 through TDPRS to help her pay past due utility bills so that she could 
qualify, but Sunshine did not provide the required documentation to the local 
Section 8 office and failed to keep her appointment with the housing authority 
to obtain a housing voucher.
        By 
August 2003, however, Sunshine had an apartment and a job at a fast food 
restaurant in Wichita Falls and had secured licensed day care for the boys, so 
the trial court appointed her temporary possessory conservator of the boys on 
August 14, 2003.  But in early September, Sunshine admitted to the boys’ 
case worker that she was on the verge of eviction and that the power to her 
apartment had already been turned off once; the case worker testified that by 
mid-October, Sunshine had been served with an eviction notice and had been fired 
from her job because she had failed to show up for three shifts.
        Furthermore, 
a Wichita Falls TDPRS case worker testified that Sunshine had a history of 
involvement with Jason Couffer, who was on probation for possessing 
methamphetamine and who, according to a police report provided to TDPRS, had 
once pushed Sunshine out of a moving vehicle. Sunshine represented to the 
Wichita Falls case worker on August 28, 2003 that Jason did not live with her 
and the boys in her apartment and that she no longer had a relationship with 
him.  However, Sunshine later admitted to the trial court that Jason had 
actually been in her life for the previous two years and that she was having 
difficulty removing herself from him.[3]
        Indeed, 
TDPRS received a referral on October 28, 2003 reporting that when Jason’s 
mother went to pick Jason up at Sunshine’s apartment, Sunshine chased 
Jason’s mother with a knife.  This referral further reported that both 
Jason and Sunshine were “high on crack cocaine” and that the three boys all 
witnessed this incident.  According to an affidavit filed by another 
Wichita Falls case worker, Jason said that Sunshine actually chased him with a 
steak knife, that it was not the first time she had chased him with a knife, and 
that their relationship was becoming more and more violent. Jason’s mother 
told the case worker that when she arrived at Sunshine’s apartment, Jason came 
to the door with scratches all over his face, and she knew they had been 
fighting.  As Jason and his mother tried to drive away, Sunshine opened the 
car door and attempted several times to drag Jason from the car as B.W. and 
A.N.W. watched.
        The 
boys also told this case worker that they had witnessed violence in the home; 
B.W., the middle child, said that Sunshine tried to beat Jason up because Jason 
had taken her money, and C.W., the oldest child, said that Sunshine “chased 
Jason in the car” because Jason had taken her money. A.N.W., the youngest, 
said that Sunshine and Jason had a fight because Jason took her money and that 
Sunshine said some “bad words” to Jason.
        The 
boys’ case worker testified that TDPRS had requested Sunshine to undergo 
court-ordered drug screens in June and September 2003, but Sunshine did not show 
up at either time. After the fight between Sunshine and Jason, TDPRS again 
requested her to take a drug test.  This time, Sunshine did submit to the 
drug test, which returned positive results for both cocaine and marijuana.  
Sunshine’s attempts to complete other court-ordered services were similarly 
sporadic; according to the boys’ case worker, Sunshine attended only three 
parenting classes and five individual counseling sessions, and after the boys 
moved in with her in August 2003, she failed to attend any family counseling 
sessions at all.
        TDPRS 
returned the boys to foster care on November 13, 2003.  According to their 
foster mother, the boys’ behavior had regressed “back to square one” after 
being with their mother; the oldest was not doing well in school, the middle 
child could no longer tie his shoes or bathe or dress himself, and the youngest 
was having accidents in his pants.  The boys’ case worker testified that 
after the boys were removed from Sunshine’s home in November, Sunshine moved 
out of state and did not contact TDPRS until she called on February 13, 
2004.  Sunshine was informed that the termination trial was set for March, 
but she said that she was planning to return to Texas in April to attend a drug 
rehabilitation program.  Sunshine visited the boys on March 17; the case 
worker testified that the visit was “wonderful” but that Sunshine told her 
that she knew she could not take care of the boys, so she wanted them to be 
placed with a family member so that she could watch them grow up.
        Sunshine 
then entered a drug rehab program and did not attend the bench trial, held on 
March 23, 2004, in which the judge found by clear and convincing evidence that 
Sunshine had endangered her children or allowed them to be endangered, that 
Sunshine had constructively abandoned the children, and that termination of 
Sunshine’s parental rights was in the children’s best interest.
        Sunshine 
complains that neither the single incident involving her fight with Jason on 
October 28 nor her drug problem can, standing alone, form the basis of a 
termination decree.  Sunshine also complains that because she did not 
directly abuse the children, the most the State can establish is that she was 
“mired in a poor financial condition.”  However, the evidence showed 
that this financial condition resulted from her own conduct; even though the 
court ordered Sunshine to maintain stable housing and employment, she failed to 
follow through when TDPRS attempted to help her secure Section 8 housing, and 
she had no income because she was fired for failing to show up to work.  
Furthermore, as detailed above, there was evidence of endangerment through the 
history of violence between Sunshine and Jason, Sunshine’s noncompliance with 
court-ordered services, and Sunshine’s inability to keep a job or maintain 
stable housing in addition to the evidence of the fight and her use of cocaine 
and marijuana.
        Therefore, 
based on the appropriate standard of review,[4] we 
hold that the evidence is factually sufficient to support the trial court’s 
findings that Sunshine knowingly placed or allowed the children to remain in 
conditions or surroundings that endangered their physical or emotional 
well-being and engaged in conduct or knowingly placed the children with persons 
who engaged in conduct that endangered their physical or emotional well-being.[5]  See Tex. 
Fam. Code Ann. § 161.001(1)(D), (E) (Vernon 2002).  We overrule 
Sunshine’s sole issue and affirm the trial court’s termination order.
   
   
                                                                  PER 
CURIAM
  
  
PANEL 
F:   MCCOY, GARDNER, and WALKER, JJ.
 
DELIVERED: 
December 9, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Effective February 1, 2004, the name of the agency changed to the Texas 
Department of Family and Protective Services.  However, for the sake of 
consistency in this case, we will continue to use TDPRS when we refer to the 
agency.
3.  
TDPRS then attempted to develop a service plan for Jason as well, but he did not 
return messages left by TDPRS case workers, and Sunshine indicated that he was 
not interested in participating in any services offered by TDPRS.
4.  
See Santosky v. Kramer, 455 U.S. 745, 759, 102 S. Ct. 1388, 1397 (1982); In 
re C.H., 89 S.W.3d 17, 25 (Tex. 2002); Tex. Dep’t of Human Servs. v. 
Boyd, 727 S.W.2d 531, 533 (Tex. 1987); Holick v. Smith, 685 S.W.2d 
18, 20 (Tex. 1985).
5.  
Because we hold that the evidence is factually sufficient to support the trial 
court’s findings under section 161.001(1)(D) and (E) of the Family Code, we 
need not address the trial court’s finding that Sunshine constructively 
abandoned the children because only one predicate finding under section 
161.001(1) is necessary to support a judgment of termination when there is also 
a finding that termination is in the child's best interest.  See In re 
A.V., 113 S.W.3d 355, 362 (Tex. 2003).  Sunshine does not challenge the 
trial court’s finding that termination was in the boys’ best interest.